UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RAMON ELIESER YAGUAL GUARANDA,

v.                                    Case No. 8:04-cr-238-T-17TBM
                                              8:06-cv-1255-T-17TBM

UNITED STATES OF AMERICA.

_____

O R D E R

This cause is before the Court on Defendant Guaranda's 28 U.S.C. § 2255 motion

to vacate, set aside, or correct an allegedly illegal sentence. (Doc. No. cv-1; cr-332).

BACKGROUND

In May 2004, a grand jury in the Middle District of Florida returned an indictment

charging Ramon Elieser Yagual Guaranda and others with possessing with intent to

distribute at least five kilograms of cocaine while on board a vessel (the "Don Enrique")

subject to United States jurisdiction, in violation of 46 U.S.C. App. § 1903(g) and 21 U.S.C.

§ 960(b)(1)(B)(ii), and conspiracy to do the same, in violation of 46 U.S.C. App. § 1903(j)

and 21 U.S.C. § 960(b)(1)(B)(ii). (Doc. No. cr-1). The total amount of cocaine found in a

compartment on the "Don Enrique" was 9,450 pounds (4.6 tons or 4,295 kilograms).

According to the DEA lab report, the total amount of cocaine seized was 3,734 kilograms.

Guaranda pled guilty as charged without a plea agreement. (Doc. Nos. cr-136, 146, 265). This Court sentenced Guaranda, within the advisory guidelines range for his crime, to 135 months imprisonment, to be followed by 48  months supervised release. (Doc. No. cr-213, 222). Guaranda did not directly appeal his sentence.

On July 7, 2006, Guaranda filed the section 2255 motion to vacate that is the subject of this case. (Doc. No. cv-1)  In this motion, Guaranda asserts that his trial counsel was ineffective for failing to challenge the sufficiency of the indictment, failing to directly appeal his sentence, and failing to allege a speedy trial violation. The motion to vacate is timely.

STANDARD OF REVIEW

The Sixth Amendment right to counsel is the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). The benchmark for judging any claim of ineffective assistance of counsel, however, is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *see also Boykins v. Wainwright*, 737 F.2d 1539, 1542 (11th Cir. 1984). The burden is on the defendant to demonstrate that (1) counsel's performance fell below an objective standard of reasonable professional assistance and (2) the defendant was prejudiced by the deficient performance. *United States v. Cronic*, 466 U.S. 648, 658 (1984).

The reasonableness of counsel's challenged conduct must be judged on the facts of the particular case, viewed as of the time of counsel's conduct. *Devier v. Zant*, 3 F.3d 1445, 1450 (11th Cir. 1993). For performance to be deficient, it must be established that, in light of all the circumstances, counsel's performance was outside the wide range of

2

professional competence. *See Strickland*, 466 U.S. at 690.  Judicial scrutiny of counsel's performance must be highly deferential, and courts "must avoid second- guessing counsel's performance." *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc). "Courts must 'indulge [the] strong presumption' that counsel's performance was reasonable and that counsel 'made all significant decisions in the exercise of reasonable professional judgment.' " *Id.* (quoting *Strickland*, 466 U.S. at 689). The defendant's burden in this regard, though not insurmountable, is a heavy one. *See Chandler*, 218 F.3d at 1314. For a petitioner to show deficient performance, he "must establish that no competent counsel would have taken the action that his counsel did take." Id. at 1315.

To establish prejudice, a petitioner must demonstrate a reasonable probability that, but for counsel's deficient performance, the result of his trial would have been different. *United States v. Greer*, 440 F.3d 1267, 1272 (11th Cir. 2006). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Rolling v. Crosby*, 438 F.3d 1296, 1300 (11th Cir. 2006). If the defendant fails to show that he was prejudiced by the alleged errors of counsel, this Court may reject the defendant's claim without determining whether the counsel's performance was deficient. *Strickland,* 466 U.S. at 697; *Tafero v. Wainwright*, 796 F.2d 1314, 1319 (11th Cir. 1986).

Because a lawyer is presumed to be competent to assist a defendant, the burden is on the accused to demonstrate the denial of the effective assistance of counsel. *United States v. Cronic*, 466 U.S. at  658. Ineffectiveness of counsel may be grounds for vacating a conviction if (1) counsel's performance fell below an objective standard of reasonable professional assistance and (2) the defendant was prejudiced by the deficient performance. *Strickland*, 466 U.S. at 687, 694. "[T]here is no reason for a court deciding an ineffective

3

assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. Thus, if the defendant fails to show that he is prejudiced by the alleged errors of counsel, this Court may reject the defendant's claim without determining whether the counsel's performance was deficient. *See Coulter v. Herring*, 60 F.3d 1499, 1504 n.8 (11th Cir. 1995). For performance to be deficient, it must be established that, in light of all the circumstances, counsel's performance was outside the wide range of professional competence. *See Strickland*, 466 U.S. at 690. In other words, when reviewing counsel's decisions, "the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc) (quoting *Burger v. Kemp*, 483 U.S. 776 (1987)).

Furthermore, "[t]he burden of persuasion is on a petitioner to prove, by a preponderance of competent evidence, that counsel's performance was unreasonable." *Chandler*, 218 F.3d at 1313. This burden of persuasion, though not insurmountable, is a heavy one. *See id.* at 1314. "'Judicial scrutiny of counsel's performance must be highly deferential,'" and courts "must avoid second-guessing counsel's performance." *Id.* (quoting *Strickland*, 466 U.S. at 689). "Courts must 'indulge [the] strong presumption' that counsel's performance was reasonable and that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'" *Id.* (quoting *Strickland*, 466 U.S. at 689-90). Therefore, "counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken 'might be considered sound trial strategy.'" *Id.* (quoting *Darden v. Wainwright*, 477 U.S. 168 (1986)). If the record is incomplete or unclear about counsel's actions, then it is presumed that counsel exercised reasonable professional

4

judgment. *See id.* at 1314-15 n.15.   Thus, the presumption afforded counsel's performance "is not . . . that the particular defense lawyer in reality focused on and, then, deliberately decided to do or not to do a specific act." *Id.* Rather, the presumption is "that what the particular defense lawyer did at trial . . . were acts that some reasonable lawyer might do." *Id.* Moreover, "[t]he reasonableness of a counsel's performance is an objective inquiry." *Id.* at 1315. For a Petitioner to show deficient performance, he "must establish that no competent counsel would have taken the action that his counsel did take." *Id.* To uphold a lawyer's strategy, a court "need not attempt to divine the lawyer's mental processes underlying the strategy." *Id.* at 1315 n.16. Finally, "[n]o absolute rules dictate what is reasonable performance for lawyers." *Id.* at 1317.

## DISCUSSION

### Grounds One and Three

In ground one, Guaranda contends that this Court should have "vacated" one of his two counts of conviction based on the fact that both counts allege the "same exact crime." (Doc. No. cv-2 at p. 6). Guaranda claims that the Fifth Amendment's protections "against multiple punishment for the same offense" and "double jeopardy" are implicated by sentencing him to both counts. (Doc. No. cv-2 at pp. 6-7). Guaranda claims that counsel should have "objected" to the use of both counts of conviction for sentencing. (Doc. No. cv-2 at p. 7).

In ground three, Guaranda claims that he was denied his Sixth Amendment right to effective assistance of counsel. Guaranda asserts, without any elaboration, that his counsel was ineffective in failing to raise a speedy trial violation. Guaranda fails to develop this argument other than as a vague and conclusory allegation.   Although, this Court must

5

construe Guaranda's pro se section 2255 motion more liberally than a pleading filed by an attorney, see *Fernandez v. United States*, 941 F.2d 1488, 1491 (11th Cir.1991), this principle cannot excuse Guaranda's failure to explain why he is entitled to any relief for asserted defects in the indictment or alleged speedy trial violations.

<u>Guilty Plea Waives Claims in Grounds One and Three</u>

By entering a plea of guilty to the two counts in the indictment, Guaranda waived the contentions in grounds one and three of his 2255 motion to vacate.  His claims in grounds one and three occurred prior to his entering his guilty plea. Guaranda's claims of ineffective assistance of counsel are directly related to events that occurred prior to his entering his guilty plea.

A guilty plea waives all non-jurisdictional defects occurring prior to the time of the plea. *Tiemens v. United States*, 724 F.2d 928, 929 (11th Cir. 1984) (citing *Tollett v. Henderson*, 411 U.S. 258 (1973)). *See also Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) (unconditional guilty plea waives right to appeal any non-jurisdictional defects in pre-plea proceedings). Guaranda cannot claim ineffective assistance of counsel for alleged violations that occurred prior to his guilty plea. Because Guaranda does not–and cannot--dispute that his guilty plea was voluntary and knowing, grounds one and three, which contend that his counsel was ineffective prior to the entry of the guilty plea, are waived, and this waiver precludes Guaranda from raising any potential due process claim arising prior to the entry of the plea.

*Merits of Ground One*

Guaranda's conclusory and unsubstantiated claim that counsel was ineffective at sentencing for failing to challenge the indictment is simply a challenge to the sentence

6

imposed. As stated previously, Guaranda waived all non-jurisdictional claims prior to his guilty plea, and is precluded from making this argument. *See Tiemens*, 724 F.2d at 929. Regardless, even if Guaranda's claim had not been procedurally waived, he would still not be entitled to relief. There is no basis for Guaranda's claim that he suffered multiple punishments for the same offense. It is beyond dispute that a conspiracy does not merge with its object substantive crime. *Iannelli v. United States*, 420 U.S. 770, 777 (1975); *United States v. York*, 578 F.2d 1036,1039-40 (5th Cir. 1978) (collecting cases). Guaranda provides no reason for this Court to reconsider this doctrine (even if it were not precluded from doing so by its own and Supreme Court precedent), other than to state that it is his belief that it violates Congressional intent.

To the extent that Guaranda's claim can be construed as challenging the indictment as multiplicitous, this claim also fails. A conspiracy charge and a possession with intent to distribute charge are not the same offense. Distinct statutory offenses are not the same for double jeopardy or multiplicitousness purposes as long as "each provision requires proof of an additional fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932) (double jeopardy); *United States v. Sirang*, 70 F.3d 588, 595 (11th Cir.1995) (multiplicitousness). When a defendant fails to object to multiplicitous counts in an indictment prior to trial, he is barred from challenging his convictions and may challenge only his separate sentences. *United States v. Grinkiewicz*, 873 F.2d 253, 255 (11th Cir.1989); Fed. R. Crim. P. 12(b)(3)(B). More importantly, Guaranda received concurrent sentences on the counts he claims were multiplicitous. Therefore, even assuming that Guaranda's multiplicity claim was correct, any error would be harmless. *See United States*

*v. Langford*, 946 F.2d 798, 804-05 (11th Cir.1991) (finding that multiplicitous securities fraud counts were harmless error because sentences were concurrent).

In the instant case, Guaranda's assertion that counsel should have "objected" because his conviction is a "Double Jeopardy violation" fails to show prejudice. Therefore, Guaranda's counsel was not ineffective under *Strickland* for failing to challenge the counts of conviction as multiple punishments. *Strickland*, 466 U.S. at 694. Guaranda has failed to show that counsel's performance was below an objective standard of reasonable professional assistance. *Id.* Thus, Guaranda's argument lacks merit and does not warrant relief.

*Merits of Ground Three*

Guaranda's assertion that counsel was ineffective because he failed to allege a violation of the Speedy Trial Act is vague and conclusory. *See Wilson*, 962 F.2d at 998. Mere assertions or conclusory allegations of ineffective assistance of counsel without factual support or a demonstration of cause and prejudice do not satisfy the *Strickland* test. Moreover, vague, speculative, or unsubstantiated claims are insufficient to support a request for collateral relief. *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991).

Grounds one and three do not warrant relief.

Ground Two

Guaranda asserts that he asked his attorney in the underlying criminal proceeding, Assistant Federal Public Defender Frank W. Zaremba (Zaremba), to file a notice of direct appeal and that Zaremba failed to do so. (Doc. cv-2 at p. 8). He claims that immediately after his sentencing, through his interpreter, Guaranda asked his attorney to file "his

8

appeal" and that counsel, again through the interpreter, told Guaranda that he would visit him "tomorrow to discuss your appeal." (Doc. cv-7 at p. 1).  Guaranda also claims that Zaremba wrote him "a letter telling [Guaranda] that [Zaremba] agreed with [Guaranda] about not wanting to appeal [Guaranda's] case. *(*Doc. cv-2 at p. 8). Guaranda claims that he was under the impression that his appeal was "ongoing" when he received Zaremba's letter and the letter was written "two months later, after time had ran to file an [a]ppeal." (Doc. cv-2 at p. 8)

On May 17, 2007, the undersigned United States District Judge presided at an evidentiary hearing on ground two.  The Court notes that, by alleging that AFPD Zaremba provided ineffective assistance of counsel, Guaranda put at issue–and thereby waived–any privilege that might apply to the contents of his conversations with AFPD Zaremba or to documents in the FPD's case file that are relevant to the filing of an appeal. *See Johnson v. Alabama*, 256 F.3d 1156, 1178-79 (11th Cir. 2001) (citing *Laughner v. United States*, 373 F.2d 326 (5th Cir. 1956)).  Furthermore, Guaranda waived his privilege, on the record, at the evidentiary hearing.[1]

---

[1] In an abundance of caution, the Court, on February 2, 2007, ordered Guaranda to file an affidavit stating that he waived his attorney client privilege related to ground two.  The Court cautioned Guaranda that it would construe his failure to file the affidavit waiving his attorney client privilege  as Guaranda's abandoning ground two. (Doc. No. cv-6).

On February 20, 2007, Guaranda filed an affidavit entitled "Affidavit Response to the Government Order Doc-6, Filed 02-02-2007"  in which he alleged that immediately after his sentencing he asked his attorney to file an appeal and counsel told him that he was would visit him "tomorrow to discuss your appeal." However, according to Guaranda, counsel never went to visit him to discuss his appeal.

Guaranda alleged, in his affidavit, that after he was transferred to F.C.I. Fort Worth, Texas, he made several unsuccessful attempts to contact his counsel via telephone to investigate his appeal, but none of the calls were answered.

He also stated several inmates told him that appeals could take a year or longer and the best way to find out if an appeal were pending would be to request a docket sheet from the district court.  Guaranda stated that when he received the docket sheet, he discovered that his appeal had not been filed.  (Doc. No. cv-7)

Attorney Edward J. Page (Page) was court-appointed to represent Guaranda at the evidentiary hearing. Assistant United Stated Attorney Cathy Peluso (Peluso) represented the Government.

### Testimony at the Evidentiary Hearing

Page called, as his first witness, Pedro Marino, the interpreter at Guaranda's sentencing hearing.  Marino testified that he did not remember this case or Guaranda and did not remember whether there was any discussion after the sentencing about an appeal. As his second witness, Page called Anna Fanfan who testified that she worked as an investigator for the Federal Public Defender's Office (FPD) and that she had often translated for Zaremba in Guaranda's case. She recognized Guaranda.  She testified that she met with Guaranda ten or more times.  She could not recall discussing an appeal with Guaranda.  She also testified that Zaremba met with Guaranda when she was not present.

---

Guaranda does not explain why he states, in his present motion to vacate that "On 8/26/05, Beverly Hunter filed a Notice of appeal on behalf of Petitioner. However, none were ever perfected."  The docket shows that on 8/26/05, Court-reporter Beverly Hunter filed a transcript of the Change of Plea Proceedings held before Magistrate Judge Thomas B. McCoun III on February 8, 2005.  (Doc. Nos. cr-265, 266). This filing is not a Notice of Appeal.

The Court construed this affidavit as Guaranda's waiver of the attorney-client privilege.  (Doc. No. cv-8).  The Court stated, "Guaranda filed an affidavit, but nowhere in the affidavit did he state that he waived the attorney client privilege.  However, because he did file the affidavit, and because case law supports the waiver of attorney-client privilege on Guaranda's claim, the Court will construe the affidavit as Guaranda's waiver of the attorney-client privilege."  (Doc. No. cv-8).  In other words, the Court preserved the claim in ground two for Guaranda even though Guaranda did not follow the Court's instructions.

The Court ordered the Government to file an affidavit from Guaranda's defense attorney AFPD  Frank Zaremba, and state whether the Government conceded that Guaranda was entitled to a belated appeal. On March 6, 2007, the Government filed AFPD Zaremba's affidavit.  Attorney Zaremba stated that he and Guaranda had discussed the issue of whether an appeal should be filed.  Attorney Zaremba stated that "as the defendant had received the safety valve adjustment, it was determined by the defendant, after discussion. . . .that he [Guaranda] would not seek an Appeal of this matter."  Attorney Zaremba stated that these conversations were through the use of a Spanish Interpreter.  Nonetheless,  Zaremba had a clear recollection of these discussions and the fact that it was determined that the defendant [Guaranda] would not file an Appeal. (Doc. No. cv-9).

She testified that she discussed issues about Guaranda's family, his education, and his arrest.  It was not her job to discuss legal topics. She remembered that it was necessary to go over the same concept several times with Guaranda.

On cross-examination, Fanfan testified that Zaremba did not speak Spanish and would not have met with Guaranda without someone who could interpret for him.  She stated that were many people who worked as interpreters/translators for the Federal Public Defender's Office.

Next, Attorney Page called Zaremba.  Zaremba is a criminal defense attorney who has worked in the private and public sectors.  Zaremba testified that he had been an AFPD for six and a half years; that prior to that time he was in private practice handling both civil and criminal matters; and that he had served as a prosecutor in Miami, Florida, from 1981-1986.  He also served an internship with the State Attorney's office in Ft. Lauderdale.  He has represented approximately one thousand defendants as an AFPD.

Zaremba acknowledged that he had to discuss concepts with Guaranda several times prior for Guaranda to understand the concept.  He testified that he spent "quite a bit of time" acquainting Guaranda with the American legal system.

Zaremba testified that he and Guaranda discussed whether Guaranda should enter a plea and decided that he would enter a straight up plea without a plea agreement.[2] He testified that he met with Guaranda after Guaranda had debriefed at least two times and after the Government found that Guaranda met the criteria set forth in subdivisions (1)-(5)

---

[2] There was a written plea agreement that was not signed.  AFPD Maria Guzman was originally assigned to this case and may have been the original recipient of the plea agreement.  She was terminated from the case on August 12, 2004, and Zaremba represented Guaranda through sentencing.  Guaranda was aware of the proposed written plea agreement and Zaremba discussed that plea agreement with Guaranda.

of USSG § 5C1.2,[3] the "safety valve" provision, decreasing his offense level by two levels.[4]

Zaremba testified that he discussed entering a straight up plea with Guaranda because the written plea agreement contained an appeal waiver. Zaremba testified that he and Guaranda discussed the fact that it was advantageous to enter a straight up plea without an appeal waiver. Zaremba testified that by entering the straight up plea Guaranda preserved the right to appeal.

Zaremba also testified that he sought a minor role adjustment via an addendum to Guaranda's Presentence Investigative Report (PSR). However, probation rejected that application of the adjustment. Nevertheless, Zaremba argued at sentencing that Guaranda was entitled to a minor role adjustment. Zaremba testified that he knew this could have been appealed, and that the issue was preserved for appeal.

Zaremba testified that he met with Guaranda at the jail prior to sentencing and discussed the *DeVaron* case[5]  and minor role.  Zaremba also testified that he and Guaranda discussed what would be argued at the sentencing and whether or not Guaranda would appeal. Zaremba testified that he was pleased that Guaranda "got the safety valve" and that he had seen it taken away at the time of sentencing in other cases.   They discussed Guaranda's providing substantial assistance post-sentencing for the purpose of

---

[3] Guaranda's sentence was decreased by two levels pursuant to USSG § 2D1.1(b)(6).

[4] The written plea agreement stated:" The United States will not oppose the defendant's request to the Court that it impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence, pursuant to USSG § 5C1.2, if the Court finds that the defendant meets the criteria set forth in 18 U.S.C. § 3553(f). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea." (Guaranda's Exhibit 4 at p. 3, ¶ 8).

[5] *United States v. Rodriguez DeVaron*, 175 F.3d 930 (11th Cir. 1999).

obtaining a Rule 35 sentence reduction. Guaranda determined that he would not appeal. Zaremba did not recall seeing Guaranda at the Orient Road Jail after sentencing.  He did recall having an opportunity to speak with Guaranda in the courtroom after sentencing. He recalled that he went over what he had discussed prior to sentencing about the appeal to be sure that Guaranda had not changed his mind about not filing an appeal.  Zaremba testified that during the brief time he met with Guaranda after sentencing, Guaranda stated that he had not changed his mind and did not wish to move forward with an appeal.

When asked whether he had discussed, with Guaranda, after sentencing, what the Judge meant by waiver of appeal, Zaremba testified that he had discussed the waiver of appeal with Guaranda at a prior time -- at the time Guaranda decided to go forward with a straight up plea.  Zaremba testified that he kept notes about his client's decision not to take an appeal on a yellow pad, but that pad had become separated from the file and he did not have the file in Court.

On cross-examination, Zaremba agreed that many of his clients were indigent, were not well educated and could be considered illiterate. He also testified that because many of his clients were not well educated, and not knowledgeable about the federal court system, he had to spend a considerable amount of time with "every client in those circumstances to make sure that they understand the federal system."  Zaremba testified that he often spent more time explaining the legal system than the evidence in the case.

Zaremba testified that he received the proposed written plea agreement in August 2004, several months before Guaranda pled guilty and several months before his sentencing.  Zaremba agreed that, at the time the plea agreement was sent to the AFPD, the Government had merely stated that it would not oppose a safety valve application if

Guaranda met the requirements at the time of sentencing, and that the debriefing of Guaranda in an attempt to determine whether Guaranda qualified for the safety valve would have occurred after the AFPD received the plea agreement.  Zaremba recalled that it was about April 19, 2005, that the Government made the determination that Guaranda was truthfully telling the Government everything he knew about the offense.   In addition, Zaremba testified that the date on the PSR was June 30, 2005.

Zaremba further agreed, on cross-examination, that the determination of whether or not Guaranda was entitled to the safety valve was a long process that took place over several debriefings. Zaremba testified that he communicated to Guaranda, before sentencing,  that the Government's determination that Guaranda was telling the truth, and therefore entitled to the safety valve provision, was good news because Guaranda would receive a lower sentence; Guaranda would potentially be sentenced to below the mandatory minimum of ten years; and because he had the potential for post-sentencing Rule 35 relief.

Zaremba also testified that he knew that Guaranda would not have the possibility for Rule 35 relief if he filed an appeal, based on the policy of the United States Attorneys' Office at that time.  He testified that the policy was to allow a defendant to get credit for substantial assistance even though the defendant did not sign a plea agreement, because of the *Blakely v. Washington*, 542 U.S. 296 (2004) decision.[6]   Zaremba testified that he told Guaranda he probably would not get Rule 35 relief if an appeal were pending.

On cross-examination, Zaremba further testified that minor role was probably not an

_____

[6] Prior to the *Blakely* decision, many assistant United States Attorneys did not allow a defendant to cooperate and receive a lower sentence unless the defendant signed a plea agreement.

appealable issue because Guaranda was the purported engineer of the ship, even though Guaranda later testified that he was not really the engineer and that a group of Colombians came on board the "Don Enrique" and one of them took over the job of engineer. Zaremba testified that Guaranda having been the engineer at some point would have been held against him on appeal. Zaremba testified that after *DeVaron*, he had not many cases reversed for denial of minor role. He testified that usually the Eleventh Circuit credited the district court judge's acting in his or her discretion on the decision granting minor adjustments.

Zaremba testified that he advised Guaranda that he probably would not prevail on the minor role issue on appeal and that while it was unlikely that he would get Rule 35 relief immediately, there was a chance he could do so in the future. Zaremba discussed with Guaranda that they should weigh the benefits of not filing an appeal and taking a chance on Rule 35 relief against appealing and perhaps losing the safety valve if the case came back for resentencing. Zaremba testified that he discussed this strategy with Guaranda "three if not four times." Guaranda agreed with Zaremba about not filing an appeal.

Zaremba testified that not only did he discuss this issue several times prior to sentencing, but also one more time on the day of sentencing, and probably after sentencing before he left the room. Zaremba was adamant that he makes a point of discussing appellate issues with his clients and does not rely on the close-out letter his office sends when a case is closed.

Zaremba testified that he spoke to Guaranda through his counselor at F.C.I. Ft.. Worth, Texas, regarding money that Zaremba was holding for Guaranda. However, Guaranda did not ask about his appeal at that time. He also testified that he did not receive

any correspondence from Guaranda regarding his appeal and that he would have responded if he had.

He further testified that he did not have any recollection of Guaranda asking him to file an appeal immediately after sentencing or telling Guaranda that he was going to visit him at the Orient Road Jail the day after sentencing to discuss his appeal. He testified that he believes Guaranda heard the judge say that Guaranda had a right to appeal and construed that to mean that Zaremba was going to file an appeal. Zaremba testified that he had a clear recollection of this case and he had no doubt that he fully advised Guaranda of his right to appeal and fully discussed and weighed with him the options of appealing or not appealing and hoping for Rule 35 relief in the future. Zaremba testified that decided that he did not want to take an appeal.

On redirect examination, Zaremba agreed that the reasonableness of the sentence would have been an appealable issue.  He further testified that while the conversation which Guaranda says took place after sentencing regarding Zaremba's visiting Guaranda at the jail to discuss the appeal could be possible, he did not remember the conversation and he did not think that it was probable.  He recalled that during their discussions prior to sentencing, Guaranda used his hands to balance the factors for and against appealing. Zaremba was sure that Guaranda had not changed his mind about his decision not to appeal at the time of sentencing.

Zaremba testified that he told Guaranda, prior to sentencing, that he would most likely receive a sentence at the low end of the guidelines minus two levels for safety valve and three levels for acceptance of responsibility. He testified that he discussed with Guaranda the specific number of a 135 month sentence prior to sentencing. He also

testified that he discussed with Guaranda that he would argue, at sentencing,  for a ten year sentence, as well as for minor role.

Zaremba responded to the Court's question and stated that he had similar conversations with Guaranda at least three times. That is, he discussed the strategy of not filing an appeal but instead, looking toward Rule 35 relief in the future.  Zaremba testified that he advised the strategy based on his experience and qualifications, and that it was an informed strategy which he conveyed to Guaranda as being the best strategy for Guaranda. However, he did not make the decision for Guaranda.

Next, Page called Guaranda to testify, through sworn interpreters.  Guaranda, who is 47 years old, testified that he had about 2-3 years of formal schooling and that he had worked with his father on fishing boats for the major part of his life. He has three siblings. Guaranda testified that he heard the judge say, at sentencing, that he had the right to appeal and that he had ten days for the attorney to file an appeal.  When asked by Page, Guaranda testified that he wanted to file an appeal. He admitted that Zaremba had discussed whether he should take an appeal and that after talking to Zaremba, Guaranda told Zaremba not to take the appeal. This occurred after he pled guilty and before the sentencing.

Guaranda testified that Zaremba discussed the safety valve with him prior to his sentencing. He testified that Zaremba told him he would be at the Orient Road Jail to visit him the next day, but that he never came to see him. He testified that he attempted to contact Zaremba after he was sentenced. He also testified that his understanding was that Zaremba would "present the appeal."   Guaranda did not explain why he thought Zaremba was going to file an appeal when Guaranda had specifically agreed that he did not want to

17

appeal.

Guaranda testified that he received a letter from Zaremba dated September 6, 2005. He put the letter away for a month.  He testified that eventually he had a fellow inmate translate the letter which stated that  Zaremba agreed with Guaranda's decision not to take an appeal,  and that the case was closed.  Guaranda testified that he disagreed with the letter because he thought his appeal was pending.

Guaranda confirmed that he had telephoned Zaremba about the money Zaremba held for him, and that he had not mentioned his appeal at that time. He also testified that he contacted the consulate in Houston, Texas to ask him to contact Zaremba because Zaremba's office would not accept collect calls. Guaranda first testified that he could read and write Spanish.  However, he later testified that he did not read Spanish and that he could not read books on engineering and that he did not have a significant role as an engineer on his father's fishing boat, or on the "Don Enrique,"  the fishing vessel that contained the 3700 kilograms of cocaine. He testified that the interpreter at the sentencing hearing told him Zaremba would visit him the next day at Orient Road Jail.  However, Guaranda did not recognize Merino, the interpreter at the sentencing hearing, when Merino was earlier called as a witness in this case.

On cross-examination, Guaranda testified that he met with Zaremba between the time of his pleading guilty and his sentencing and agreed that he was not going to file an appeal.  He also testified that when he heard the judge state that he had a right to appeal, he thought Zaremba was going to file an appeal; however, at no time after the Court imposed sentence until the marshals took him away, did he talk to Zaremba about an appeal or ask Zaremba to file an appeal.

18

Applicable Law

In *Flores-Ortega*, the Supreme Court held that an attorney who disregards instructions from his client to appeal has acted "in a manner that is professionally unreasonable." *Flores-Ortega*, 528 U.S. at 477. Moreover, when an attorney fails to follow express instructions to appeal, prejudice is presumed. *Flores-Ortega,* 528 U.S. at 483; *Gomez-Diaz v. United States*, 433 F.3d 788, 790-92 (11th Cir. 2005). If the petitioner did not specifically direct his attorney to file an appeal, a reviewing court must inquire whether the attorney consulted with the petitioner regarding the advantages and disadvantages of appealing and made a reasonable effort to determine the petitioner's wishes. *Flores-Ortega*, 528 U.S. at 478. If so, the attorney has acted unreasonably only if he ignored the petitioner's wishes to appeal. *Id.* If the attorney did not consult with the petitioner, the court must further inquire whether the attorney had the affirmative duty to consult. *Id.* An attorney has this duty when either (1) any rational defendant would want to appeal, or (2) his particular client reasonably demonstrated an interest in appealing. *Flores-Ortega*, 528 U.S. at 480. In making this determination, courts must take into account all the information counsel knew or should have known at the time. *Id.* Highly relevant factors include whether the conviction resulted from a trial or a plea and whether the defendant expressly waived his appellate rights. *Id.* Because the failure to file a notice of appeal results, not in the denial of a fair proceeding, but in the denial of a proceeding altogether, the prejudice prong of the Strickland test for ineffectiveness of counsel in this context requires the petitioner to demonstrate that, but for his counsel's omission, there is a reasonable probability that he would have timely appealed. *Flores-Ortega*, 528 U.S. at 480. While demonstration of

nonfrivolous grounds for appeal may be adequate to show a reasonable probability that a petitioner would have timely appealed, a defendant is not required to offer nonfrivolous grounds for appeal to establish prejudice.[7] *Flores-Ortega*, 528 U.S. at 483; *Gomez-Diaz*, 433 F.3d at 789.  Accordingly, a petitioner who pleads guilty pursuant to a plea agreement, waiving his right to appeal on most grounds, still may obtain a belated appeal based on the proof set forth above. *Gomez-Diaz,* 433 F.3d at 793-94.

Conclusion

Zaremba's testimony is credible. He is an experienced criminal defense attorney who regularly represents defendants in this Court and files appeals on a regular basis on behalf of his clients.  During his several conferences with Guaranda, Zaremba discussed and explained the advantages and disadvantages of pursuing an appeal, the  possible issues to raise on appeal and made a reasonable effort to determine Guaranda's wishes. Guaranda and Zaremba agreed on a strategy, to the point that Guaranda was using his hands to weigh the benefits of taking an appeal as opposed to not taking an appeal and looking for Rule 35 relief in the future.[8]

Guaranda's testimony is less credible, and, in fact, his testimony was inconsistent. For example, he first stated that he could read Spanish newspapers and then retracted that statement. Furthermore, Guaranda testified that he did not know anything about being an

---

[7] Should a defendant be granted a belated appeal because of trial counsel's failure to file a notice of appeal and should appellate counsel determine that no meritorious issue existed to present, appellate counsel would be obligated to file a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967).

[8] The fact that Guaranda would not waive his attorney-client privilege on the record until he was told that he did not have to divulge *everything* that he told Zaremba leads the Court to believe that he knows more than he has presently revealed about the criminal conspiracy.  If he does, and he cooperates, then Rule 35 relief is possible.

engineer. This Court finds that statement not credible.  If Guaranda had no knowledge of ships and navigation, he would not have been hired to be in a position of responsibility on on a vessel that was transporting a large amount of cocaine--over 3700 kilograms.

Furthermore, the Court does not believe that Guaranda thought he had a pending appeal because during his telephone call to Zaremba he asked about the disbursement of his money, but did not ask at all about his alleged pending appeal. Guaranda testified that he actually told Zaremba not to file an appeal.  Yet, when he heard the judge's words at the sentencing hearing telling him he had a right to appeal within 10 days, Guaranda, in his mind, perhaps, thought that the words, which the judge says to every defendant, negated all of the discussions and decisions he and Zaremba had regarding the strategy of not taking an appeal.  Guaranda himself stated that he did not talk to Zaremba after the sentencing.  The only question seems to be whether the interpreter told Guaranda that Zaremba would go to Orient Road Jail to see Guaranda the day after the sentencing. Zaremba testified that he did not say this, and the Court finds this testimony credible.

To the extent Guaranda suggests that Zaremba had a duty to consult with him regarding an appeal during the ten days immediately following sentencing, that contention is without merit, given Zaremba's numerous conferences with Guaranda prior to sentencing. *See Joynes v. U.S. 2007 WL 328602 at *4 (M.D. Fla. Jan. 31, 2007). See Roe v. Flores-Ortega,* 528 U.S. at 479-80  (rejecting brightline rule that counsel must always consult with defendant regarding appeal); *Medina v. United States*, 167 Fed. Appx. 128, 134-35 (11th Cir.2006)(where client neither instructs attorney to appeal nor asks that an appeal not be taken, relevant question in determining whether attorney performed deficiently by not filing NOA is "whether counsel in fact consulted with the defendant about

21

an appeal" ).

Guaranda's testimony that he asked Zaremba to file an appeal immediately after sentencing is not credible. Any contention that Zaremba never discussed the advantages and disadvantages of appealing is flatly contradicted by Zaremba's testimony.

This Court finds that Guaranda did not instruct Zaremba to file an appeal. Therefore, Zaremba did not have a per se duty to file an appeal as outlined in *Flores-Ortega*. Guaranda's attorney fulfilled his constitutional duty to consult with Guaranda and to make a reasonable effort to determine Guaranda's wishes. Zaremba acted in accordance with those wishes.

Given Guaranda's understanding and agreement with Zaremba's advice and sentencing and appeal strategy, Zaremba's consultations satisfy the requisite "reasonable effort to determine the client's wishes." *Flores-Ortega, supra* at 478. An attorney who fails to file an appeal on behalf of a client who specifically requests it acts in a professionally unreasonable manner. *Gomez-Diaz, supra* at 792. Where, however, as here, Guaranda did not request that his attorney file an appeal, Zaremba was not ineffective. Zaremba's conduct cannot be considered "professionally unreasonable." *Strickland v. Washington*, 466 U.S. 668, 691 (1969).

Guaranda has not established that he reasonably demonstrated his desire to appeal before the time for filing an appeal had passed. Accordingly, based on his motion and the record now before this Court, Guaranda has not met his burden of proving by a preponderance of the evidence that Zaremba provided ineffective assistance of counsel because he has not shown that he requested Zaremba to file an appeal and Zaremba failed to do so. Guaranda has not established any entitlement to relief based on ineffective

22

assistance of counsel. The Court finds the Government's closing argument persuasive and adopts and incorporates that argument in this order.

Accordingly, the Court orders:

That Guaranda's motion to vacate (Doc. No. cv-1; cr-332) is denied, with prejudice. The Clerk is directed to enter judgment against Guaranda in the civil case and to close that case.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Defendant is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Defendant has not made the requisite showing in these circumstances.

Finally, because Defendant is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on June 14, 2007.



ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Counsel of Record